394 P.2d 71

**Morris L. PETERS, Plaintiff and Appellant,**

**v.**

**Virginia S. PETERS, Defendant and Respondent.**

**No. 10059.**

Supreme Court of Utah.

July 20, 1964.

---

**414**

Ronald N. Boyce, Salt Lake City, Clayton & Gould, Ogden, for appellant.

LaMar Duncan, Salt Lake City, for respondent.

CROCKETT, Justice:

After a trial, the lower court dismissed the complaint of plaintiff Morris L. Peters and granted a divorce to defendant Virginia S. Peters on her counterclaim; gave her a lump sum award of $2,500 in lieu of alimony and $350 counsel fees. After plaintiff filed notice of appeal, upon supplemental proceeding, the court awarded defendant $50 per month temporary alimony and $300 counsel fees to defend the appeal. Plaintiff appeals from both the judgment and the supplemental order.

The parties were married on November 6, 1961, in Preston, Idaho, and have since lived in Ogden, Utah. It was a second marriage for both. Plaintiff Morris was 54 and defendant Virginia 40 years old. Virginia had a teenage son, Eddie, by her prior mar-

riage, and Morris had custody of a teenage girl, Jacklyn Peters, whom he and his former wife had reared. At first both children lived with these parties, but soon thereafter it proved that Eddie was not welcome in the plaintiff's home, and he went to live with his own father.

Both plaintiff and defendant were employed. Morris worked for the Ogden Railroad Company and received about $10,000 per year gross, $6,000 net. Virginia had worked most of the time during the marriage and was earning $325 per month at the time of the divorce.

Before their marriage the parties had entered into an antenuptial agreement. In it defendant Virginia had agreed to relinquish any rights she would acquire by the marriage in plaintiff's home, and to proceeds therefrom if Morris sold it to Weber College, which had an option to purchase it. The agreement further provided that all other property, including a boat and trailer, an automobile, a bank account of $3,500, and household furniture belonging to the plaintiff; and an automobile and household furniture belonging to the defendant, would be held in joint tenancy. Plaintiff sold his home for $25,000 and on March 9, 1962, put about half that amount into another home in Ogden. He took title to the new home and to certain stocks and bonds in joint tenancy with Virginia.

About 15 months after the marriage Morris brought an action for divorce, and on February 13, 1963, obtained a decree by default. It appears that the difficulty underlying that action was Morris's concern about his property and his torment over the effect of having it in joint tenancy. He apparently had been under the impression that the antenuptial agreement would preserve his sole ownership in spite of the fact that titles were later taken in joint tenancy. However, this difficulty appears to have been overcome, temporarily at least, by the defendant's transferring to him all of her interest in the property mentioned and thereafter on May 14, 1963, that decree was set aside.

The reconciliation lasted but briefly. On October 28, 1963, Morris commenced this action for divorce on the ground of mental cruelty and procured an order to show cause and restraining order commanding Virginia to remove from the home, from which order, incidentally, he relented and permitted her to remain there up to and including the time of the trial.

■ We are not impressed with the plaintiff's argument that the court erred in denying him a divorce and granting it to the defendant on her counterclaim. It would serve no useful purpose to detail the accusations of fault against each other. It is sufficient to note that on the basis of the evidence that the plaintiff had been extremely penurious about paying necessary bills; that in remonstrating about them had

repeatedly threatened to get a divorce, resulting in continual strife; including some evidence that he had resorted to actual physical violence, there was ample basis to support the court's finding that his conduct had caused defendant great mental anguish and distress. Allowing the traditional indulgence to the trial court because of his advantaged position, we cannot say that the evidence so clearly preponderates against his finding as to require overturning it.[1]

■ We likewise fail to see merit in plaintiff's attack upon the lump sum award of $2,500 in lieu of alimony. He has his home and the stocks and bonds which defendant signed over to him after the first divorce. She had worked and contributed toward the maintenance of the home; and had paid her own medical and dental bills. Considering those facts, and the various circumstances of the parties in the light of the principles set forth in Wilson v. Wilson,[2] the decree impresses us as well within the limits of the discretion of the trial court. As a matter of fact, we perceive nothing in this record to suggest that it was anything other than a wise and equitable adjudication of their rights.

The problem of more serious interest and concern is the plaintiff's contention that

after his notice of appeal was filed, the trial court was without jurisdiction to make the award of $50 per month temporary alimony pending the appeal and $300 attorneys' fees to defend against it. It is true, as plaintiff contends, that in some instances the Supreme Court has, under special circumstances, awarded counsel fees because that is a matter peculiarly within the knowledge of the court.[3] But it has neither said, nor intended to imply, that the trial court could not make such an award. It is to be noted that the situation with respect to alimony or support money is different. The complexities, actual and potential, upon which such awards must necessarily be based require the taking and consideration of evidence, which this court is neither equipped nor disposed to do.

■ Plaintiff's contention that the trial court was without jurisdiction to make the order complained of rests upon a misconception as to the judgments appealed from. It fails to distinguish between the main judgment in the divorce action and the subsequent order made in the supplemental proceedings. It is true that the main judgment is a final and appealable judgment as to the issues therein dealt with. When those questions as to divorce, custody of children, sup-

---

1. See Lawlor v. Lawlor, 121 Utah 201, 240 P.2d 271.
2. 5 Utah 2d 79, 296 P.2d 977; see also MacDonald v. MacDonald, 120 Utah 573, 236 P.2d 1066, and Pinion v. Pinion, 92 Utah 255, 67 P.2d 265.

3. See Cast v. Cast, 1 Utah 128; Hendricks v. Hendricks, 91 Utah 564, 65 P.2d 642; Peterson v. Peterson, 112 Utah 542, 189 P.2d 961.

port money, alimony and/or property rights are therein adjudicated and an appeal is taken, the district court is indeed without further jurisdiction as to them. In this respect the divorce judgment is like other judgments. But there is another aspect of a divorce proceeding which is entirely different. After the main judgment is entered life goes on, and the needs of the spouses and the children and the duties to fulfill them continue day after day. In order to take care of these needs, it is essential that the trial court have continuing jurisdiction to enforce the rights of the parties.

It requires but a moment's reflection to see what a mischievous situation would exist if, for example, a husband misbehaving in failing to provide, and perhaps in abusing his wife and/or children, could appeal a judgment and continue the neglect and abuse during the appeal. The difficulty could be magnified in various ways depending upon circumstances, including such facts as that a destitute family, living a long distance from the state capitol, may be required to suffer undue delay and hardship, or even left entirely without remedy, unless the district court could act.

There is no good reason why not, and every reason why, that court should and does have continuing jurisdiction in the action over the family's continuing problems to protect the rights and interests of the parties. That this is true and was so recognized by the legislature is indicated in Section 30–3–5, U.C.A.1953:

> "When a decree of divorce is made the court may make such orders in relation to the children, property and parties, and the maintenance of the parties and children, as may be equitable; * * *. *Such subsequent changes or new orders* may be made by the court with respect to the disposal of the children or the distribution of property as shall be reasonable and proper." (Emphasis added.)

Subsequent changes or new orders, which must be based on changed circumstances,[4] obviously could only be made by the court in supplemental proceedings as was done here. Until the plaintiff refused to pay the $2,500 and took the appeal, the defendant could not have petitioned for the allowances of which the plaintiff complains upon the basis set forth because the circumstances giving rise to the need did not exist until then. Her petition stating those facts invoked the jurisdiction of the court in a new and supplemental proceeding in which it was authorized to make such further orders as it deemed reasonable, equitable and just under the circumstances.[5]

---

4. See Chaffee v. Chaffee, 63 Utah 261, 225 P. 76.

5. See Cody v. Cody, 47 Utah 456, 154 P. 952, and Oldham v. Oldham, 28 N.M. 163, 208 P. 886, and also 19 A.L.R.2d 703.

**418**

The main judgment and the order in supplemental proceedings are both affirmed, provided that the alimony payments of $50 per month are credited upon the $2,500 lump sum alimony award. Costs to defendant (respondent).

HENRIOD, C. J., and McDONOUGH, CALLISTER and WADE, JJ., concur.