KILBRIDE v KILBRIDE

Docket No. 95295. Submitted February 9, 1988, at Detroit. Decided
     October 18, 1988.

     Plaintiff, Barbara Kilbride, and defendant, Terence Kilbride, were
         divorced by order of the Wayne Circuit Court, Henry J. Szy-
         manski, J. The court awarded plaintiff $3,000 in attorney fees
         as well as $500 per week alimony until further order of the
         court, one-half of the proceeds from the sale of the marital
         home, a $3,000 bank account, an automobile, a $3,000 Individ-
         ual Retirement Account, one-half of the parties' life insurance
         policies and stocks, and ordered defendant's pension divided
         under a formula suggested by plaintiff. Defendant received
         essentially equivalent assets. The pension formula suggested by
         plaintiff multiplies the percentage of the pension awarded to
         plaintiff by the trial court by a fraction, the numerator of
         which is the total period of time defendant was a participant in
         the pension plan while married and the denominator of which
         is the period of participation in the pension plan by defendant
         at his date of retirement or the date upon which he could begin
         to receive benefits, at plaintiff's option, multiplied by defen-
         dant's monthly pension benefits on the date which plaintiff
         elects to receive benefits. Defendant appealed.

         The Court of Appeals held:

         1. The trial court did not abuse its discretion in ordering
         defendant to pay $3,000 of plaintiff's attorney fees. The fact

REFERENCES

Am Jur 2d, Divorce and Separation §§ 589-591, 625, 639-647, 905-
     907, 921, 948, 949.

Am Jur 2d, Parent and Child §§ 17, 47.

Excessiveness or adequacy of amount of money awarded as perma-
     nent alimony following divorce. 28 ALR4th 786.

Authority of divorce court to award prospective or anticipated
     attorneys' fees to enable parties to maintain or defend divorce
     suit. 22 ALR4th 407.

Responsibility of noncustodial divorced parent to pay for, or contrib-
     ute to, costs of child's college education. 99 ALR3d 322.

Pension or retirement benefits as subject to award or division by
     court in settlement of property rights between spouses. 94 ALR3d
     176.

that plaintiff received substantial assets in the property settlement and alimony awards does not preclude her entitlement to an award of attorney fees.

2. The trial court did not abuse its discretion in awarding plaintiff $500 per week alimony. The court properly considered defendant's ability to pay.

3. The trial court did not err when it failed to consider defendant's voluntary assumption of plaintiff's promise to pay for their daughter's college education when setting alimony. Neither party is legally bound to pay for the daughter's college education.

4. The court did not abuse its discretion when it provided that defendant pay alimony until further order of the court.

5. The trial court erred in dividing defendant's pension. The court's method of division and distribution is dependent, at least in part, on the future accrual of pension benefits by defendant after the divorce. The portion of a pension attributable to service credit earned after a divorce is not distributable as part of a marital estate. Also objectionable is the fact that the amount awarded to plaintiff has not been reduced to a sum certain at the time of divorce and is contingent upon various actions and choices made by the parties following the divorce. The value of the pension must be determined at the time of divorce and a fixed distribution achieved between the parties according to established principles. The trial court's decision as to the division of the pension is reversed and the matter is remanded to the trial court for redetermination of the distribution of the pension plan in an appropriate manner. In all other respects the decision of the trial court is affirmed.

Affirmed in part and reversed in part.

1. DIVORCE — ATTORNEY FEES.

An award of attorney fees in a divorce case is within the discretion of the trial court, but attorney fees should be awarded only if necessary to enable a party to carry on or defend the litigation (MCL 552.12; MSA 25.93; MCR 3.206[A]).

2. DIVORCE — ALIMONY — APPEAL — DE NOVO REVIEW.

An award of alimony is within the discretion of the trial court and, while the Court of Appeals reviews alimony awards de novo and exercises its independent judgment in reviewing the evidence, the Court of Appeals gives grave consideration to the trial court's findings and will not reverse unless convinced it would have come to a different conclusion had it been sitting in the trial court's position.

3. DIVORCE — ALIMONY.

Factors to be considered in determining whether alimony should be awarded in a judgment of divorce include: (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the ability of the parties to work; (4) the source and amount of property awarded to the parties; (5) the age of the parties; (6) the ability of the parties to pay alimony; (7) the present situation of the parties; (8) the needs of the parties; (9) the health of the parties; (10) the prior standard of living of the parties and whether either is responsible for the support of others; and (11) general principles of equity.

4. DIVORCE — ALIMONY — VOLUNTARY ASSUMPTION OF PROMISE TO PAY COLLEGE EXPENSES.

One parent's voluntary assumption of the other parent's promise to pay their adult child's college expenses need not be considered by a court when setting alimony in a divorce action between the parents where there is no legal obligation to pay the college expenses.

5. DIVORCE — MARITAL ESTATE — PENSIONS.

A pension may be distributed as part of a marital estate only to the extent of service credit accrued by a party during the marriage; the portion of a pension attributable to service credit earned after the divorce or before the marriage is not distributable as part of the marital estate (MCL 552.18[1]; MSA 25.98[1]).

6. DIVORCE — MARITAL ESTATE — PENSIONS.

A pension treated as part of the marital estate in a divorce proceeding must be valued at the time of the divorce and a fixed distribution achieved between the parties.

7. DIVORCE — MARITAL ESTATE — PENSIONS — PRESENT VALUE.

It is necessary to know (1) the amount of the monthly benefit subject to division, (2) the percentage of that benefit to be awarded to the nonemployee spouse, and (3) when that benefit to be awarded begins payment in order to reduce a pension to present value for purposes of dividing the pension as part of the marital estate in a divorce proceeding; the amount of pension benefit an employee spouse is entitled to can, and should, be determined at the time of divorce based upon three assumptions: (1) that the employee spouse will retire at the earliest date permitted under the plan, (2) that the pension is based upon the employee spouse's salary at the time of divorce, and (3) that the pension is based upon the number of years of credited service earned up to the date of divorce; once this

figure is arrived at, it must be reduced by two factors to determine the monthly pension benefit to be awarded to the nonemployee spouse: (1) the coverture factor, i.e., an adjustment to reflect any time for which the employee spouse was a member of the pension system before the marriage, which factor is multiplied by the amount of the pension benefit to which the employee spouse is entitled and (2) the employee spouse's benefit must be reduced by the distribution percentage to the nonemployee spouse; the final step is to apply generally accepted actuarial methods to reduce the nonemployee's monthly benefit to present value and to devise a distribution method.

*Carole L. Chiamp,* for plaintiff.

*Ronald Zajac,* for defendant.

Before: GILLIS, P.J., and GRIBBS and SAWYER, JJ.

PER CURIAM. Defendant appeals as of right from the trial court's judgment of divorce awarding plaintiff partial attorney fees, alimony, and one-half of defendant's pension. We affirm in part and reverse in part.

The parties married on June 5, 1958, and separated on September 3, 1984. The parties had four children, all of whom had reached the age of majority prior to the entry of the judgment of divorce.

Defendant was born on November 10, 1935. Before the marriage, defendant earned his bachelor of science degree in mechanical engineering at the University of Notre Dame. Defendant began working for Ford Motor Company in 1958. He earned his master of business administration degree from the University of Detroit (U of D) in 1963. Defendant earns in excess of $60,000 per year, including his bonus. Defendant also receives other fringe benefits, including medical insurance, life insurance, and a pension and participates in various stock purchase programs.

Plaintiff was born on March 11, 1936. Before the marriage, she earned a degree in education from U of D. Plaintiff also received a fellowship to pursue her master's degree; however, the parties decided that plaintiff should give up the fellowship because it did not pay a salary. Plaintiff then accepted a position with the Detroit School District. Plaintiff gave up her position shortly after the marriage because she became pregnant.

In 1970, plaintiff began working as a teacher's aide in the Ferndale adult education program. Plaintiff earned $4 per hour. The next year, plaintiff actually taught the class and earned $8 per hour. Thereafter, plaintiff claims that she was offered a full-time teaching position; however, she did not accept that position because defendant allegedly objected. Had plaintiff accepted the position, she might now be earning $39,000 per year as a tenured teacher. In 1977, however, plaintiff began working at U of D because the parties needed money for their children's educations. Plaintiff earned $9,000 per year and received free tuition for herself and one of the parties' children. Plaintiff earned her master's degree in remedial reading. When plaintiff left her position in 1985, she was earning $10,000 per year. Plaintiff left her position on May 1, 1985, to join a business venture. Plaintiff was to earn $20,000 per year for teaching English to foreign businessmen. Plaintiff left this job after ten months when it appeared that no one was interested in the service to be offered.

Defendant testified that plaintiff drank heavily; however, he conceded that her problem has subsided since she began taking Antabuse in 1982. In 1981, the parties began having problems with their youngest child, Sheila, who was born on April 3, 1967. Plaintiff sought counseling with

Maria Brane, a psychologist. Although plaintiff first consulted with Brane regarding her daughter, she later sought counseling for herself. Ultimately, it was determined that plaintiff suffered from depression. In fact, plaintiff's depression was so severe that she was hospitalized in September, 1984, for five weeks and, again, in April, 1986, for three weeks. Plaintiff currently uses medication to control her depression and takes Antabuse.

Since she left her last position, plaintiff has applied for substitute teaching positions in three school districts; however, when asked to work by one of those districts, plaintiff became so nervous and depressed that she became ill and could not work. When plaintiff was called again, she did not report because there was a show cause hearing involving the present divorce case on that same day. A substitute teacher makes $45 per day.

After plaintiff's April hospitalization, she was offered the chance to interview for the position of a remedial reading instructor. Plaintiff did not interview because her psychologist and Dr. Rhona B. Ahmad, a psychiatrist who treated plaintiff during her April hospitalization, felt that her depression was too severe and that, if she failed to obtain the job, she would become more depressed.

Plaintiff intended to continue her search for teaching employment or to seek other nonstressful work. Brane testified that plaintiff's prognosis is guarded and that she is limited in her ability to work because she might require extensive absences due to her hospitalizations and lack of energy because of her depression. Brane believed that plaintiff's depression was in part biological.

Dr. Paul Guerrero, who worked with Brane, testified that plaintiff's prognosis was fair to good with treatment. He did not believe that plaintiff could handle a job unless it was nonstressful.

Guerrero suggested that plaintiff do volunteer work instead.

Ahmad also testified that plaintiff's prognosis was fair with continued treatment and that plaintiff would be employable with continued treatment. Ahmad believed that employment for plaintiff would be therapeutic, but Ahmad recognized that if plaintiff became severely depressed, she would require acute treatment either at her home or in the hospital.

The parties began to have marital problems shortly after the birth of their first child. They sought counseling for a time, but soon stopped. Plaintiff sought the divorce because defendant allegedly objected to her attempts to pursue activities outside the home throughout the marriage and because she could no longer tolerate defendant's allegedly domineering attitude.

Plaintiff testified that her attorney charged $100 per hour. Plaintiff paid her attorney fees until February, 1986. Plaintiff estimated that she owed between $4,000 and $5,000 in attorney fees. Plaintiff's two older children had offered to help pay these fees. Plaintiff did not want to ask these children to help pay her attorney fees because they were already helping to pay her living expenses. Plaintiff's mother was also sending her money. Plaintiff had been receiving $125 per week in temporary alimony.

After hearing the testimony, the trial court awarded plaintiff $3,000 in attorney fees as well as $500 per week alimony until further order of the court. The alimony award was made on the basis of testimony by plaintiff's experts that plaintiff would have difficulty finding and maintaining employment because of her depression. Plaintiff also received one-half the proceeds from the sale of the marital home, a $3,000 bank account, an automo-

bile, a $3,000 Individual Retirement Account, one-half of the value of the parties' life insurance policies and stocks. Defendant received essentially equivalent assets. Defendant estimates the value of these assets to be approximately $95,000. The trial court also ordered defendant's pension divided under a formula suggested by plaintiff.

Defendant first claims that the trial court abused its discretion when it ordered him to pay $3,000 of plaintiff's attorney fees. An award of attorney fees in a divorce case is within the discretion of the trial court; however, attorney fees should be awarded only if necessary to enable a party to carry on or defend the litigation. MCL 552.12; MSA 25.93 and MCR 3.206(A). See also *Ozdaglar v Ozdaglar,* 126 Mich App 468, 472-473; 337 NW2d 361 (1983). Defendant argues that, because plaintiff received substantial assets in the property settlement and alimony awards, she was not entitled to attorney fees. We disagree and find no abuse of discretion under these facts. See and compare *Atkinson v Atkinson,* 160 Mich App 601, 612; 408 NW2d 516 (1987), lv den 429 Mich 884 (1987); *Rapaport v Rapaport,* 158 Mich App 741, 751-752; 405 NW2d 165 (1987), modified on other grounds 429 Mich 876 (1987); *Rethman v Rethman,* 156 Mich App 74; 401 NW2d 314 (1986), vacated in part on other grounds 429 Mich 868 (1987); *Bone v Bone,* 148 Mich App 834, 840; 385 NW2d 706 (1986); *Fulton v Fulton,* 143 Mich App 187, 192-193; 371 NW2d 522 (1985); *Carlson v Carlson,* 139 Mich App 299, 305; 362 NW2d 258 (1984); *Ozdaglar, supra* at 472-473; *Vaclav v Vaclav,* 96 Mich App 584, 593; 293 NW2d 613 (1980); *Radway v Radway,* 81 Mich App 328, 333; 265 NW2d 202 (1978); *Abadi v Abadi,* 78 Mich App 73, 79-80; 259 NW2d 244 (1977), lv den 402 Mich 870 (1978); *Gove v Gove,* 71 Mich App 431, 434-436;

248 NW2d 573 (1976); *Mixon v Mixon,* 51 Mich App 696, 702-703; 216 NW2d 625 (1974); *Pinney v Pinney,* 47 Mich App 290; 209 NW2d 467 (1973), lv den 391 Mich 767 (1974); *Schaffer v Schaffer,* 37 Mich App 711, 715; 195 NW2d 326 (1972).

Defendant next claims that the trial court abused its discretion when it awarded plaintiff $500 per week in alimony because it failed to: (1) consider his ability to pay that amount, (2) consider defendant's "obligation" to pay for Sheila's college education in light of plaintiff's testimony that she had told Sheila that there would be sufficient money in the parties' assets for Sheila to attend school, and (3) restrict defendant's payment of alimony to a certain time in the future to motivate plaintiff to seek employment.

An award of alimony is within the discretion of the trial court. *Cloyd v Cloyd,* 165 Mich App 755, 759; 419 NW2d 455 (1988). This Court reviews such an award de novo and exercises its independent judgment in reviewing the evidence, but gives grave consideration to the trial court's findings and will not reverse unless convinced it would have come to a different conclusion had it been sitting in the trial court's position. *Id.* Factors to be considered in determining whether alimony should be awarded in a judgment of divorce include: (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the ability of the parties to work, (4) the source and amount of property awarded to the parties, (5) the age of the parties, (6) the ability of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the health of the parties, (10) the prior standard of living of the parties and whether either is responsible for the support of others, and (11) general principles of equity. *Id.*

We reject defendant's claim that the trial court failed to consider his ability to pay in awarding plaintiff alimony. Reviewing the trial court's opinion, we believe that the trial court did consider defendant's ability to pay. On these facts, an alimony award of $500 per week was not an abuse of discretion. Compare *Giesen v Giesen,* 140 Mich App 335; 364 NW2d 327 (1985), with *Fulton, supra.*

Although defendant concedes that the trial court could not have ordered either of the parties, absent a consent judgment, to pay child support to be used for Sheila's college education because she was over the age of majority, *Felcoski v Felcoski,* 159 Mich App 762; 407 NW2d 11 (1987); *Kalter v Kalter,* 155 Mich App 99, 105; 399 NW2d 455 (1986), lv den 428 Mich 862 (1987), reconsideration den 428 Mich 904 (1987); *Arndt v Kasem,* 135 Mich App 252, 258-259; 353 NW2d 497 (1984), he claims that plaintiff's testimony confirms that she told Sheila that her college education would be paid out of the parties' assets. Therefore, defendant contends that he is merely fulfilling a contractual and moral obligation on the part of the plaintiff by providing such support and that the trial court should have considered his support of Sheila in setting alimony. Defendant relies on *Parrish v Parrish,* 138 Mich App 546; 361 NW2d 366 (1984).

MCL 552.23(1); MSA 25.103(1) provides:

Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage as are committed to the care and custody of either party, the court may further award to either party the part of the real and personal estate of either party and alimony out of the estate real and personal, to be paid to

either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all other circumstances of the case.

In *Parrish,* the parties had a child who was eighteen years old and suffered from cerebral palsy. The trial court awarded the plaintiff mother $25 per week as alimony as long as the child was alive and in the plaintiff's care, custody, and control and the plaintiff assumed the child's expenses. While this Court held that the trial court could not order the defendant father to pay child support for a child beyond the age of eighteen unless the court had previously obtained jurisdiction over the child while that child was a minor, this Court also held that the trial court did not err when it considered the plaintiff's assumed responsibility for her handicapped daughter's support in determining the alimony award. *Id.* This Court noted that the trial court was not precluded from considering the plaintiff's voluntary assumption of her handicapped daughter's support, even though there was no legal obligation for the plaintiff to do so. This Court also noted that in the predecessor to MCL 522.23; MSA 25.103, the Legislature had not used the term "minor children" as it had in the child support statute and, therefore, the alimony statute was not so limited. *Id.*

We believe that *Parrish* is distinguishable. We do not believe that Sheila was committed to the care and custody of either party, as was the child in *Parrish,* or that either party was "responsible" for her support. Consequently, the trial court did not err when it failed to consider defendant's voluntary assumption of this obligation in determining the amount of plaintiff's alimony and,

instead, held that the parties could independently agree to share Sheila's college expenses. *Fulton, supra* at 191.

Moreover, the trial court did not abuse its discretion when it provided that defendant pay alimony until further order of the court. We note that defendant could move to modify the alimony award upon new facts or changed circumstances arising since the judgment which would justify revision. MCL 552.28; MSA 25.106. See also *Eckhardt v Eckhardt,* 155 Mich App 314, 316-317; 399 NW2d 68 (1986).

Defendant also claims that he will be unable to exercise his ability to move for modification because he will be unable to discover plaintiff's condition given the physician-patient privilege, MCL 600.2157; MSA 27A.2157, and the psychologist-patient privilege, MCL 333.18237; MSA 14.15(18237). Thus far, plaintiff has waived these privileges and has not indicated an intent to invoke them. If problems arise in the future, defendant may certainly bring them to the trial court's attention.

Finally, defendant claims that the trial court violated MCL 552.18(1); MSA 25.98(1) when it awarded plaintiff pension benefits pursuant to the following formula: the percentage of the pension awarded to plaintiff by the trial court multiplied by a fraction, the numerator of which was the total period of time defendant was a participant in the plan while married and the denominator of which was the total period of participation in the pension plan by defendant at his date of retirement or the date upon which he could begin to receive benefits, at plaintiff's option, multiplied by defendant's monthly pension benefits on the date which plaintiff elects to receive benefits. For example, if defendant retired at age fifty-five after

thirty years of service and the parties had been married for twenty-eight of those thirty years and the trial court awarded plaintiff one-half of a monthly pension benefit of approximately $1,800, plaintiff would receive $\frac{1}{2} \times \frac{28}{30} \times 1800 = \$840$.

John Bremer, defendant's expert, testified that the present value of defendant's pension was $77,335 if defendant retired at age sixty-two, but $54,447 if he retired at sixty-five. Charles Monroe, plaintiff's expert, testified that defendant's pension had a present value of $84,300 if he retired at age sixty-two. Monroe also testified that defendant's pension had several present values, which depended upon the date defendant retired. The earlier defendant's retirement date, the larger the present value of the pension.

Marvin Dery, the records supervisor of Ford Motor Company's pension department as well as its pension plan administrator, testified that if defendant terminated his employment on December 31, 1985, he would be entitled to receive a pension of $1,829.51 at age sixty-five. If defendant retired at age fifty-two, he would receive either $1,122 each month with survivorship benefits or $1,156 each month without survivorship benefits. In addition, defendant would receive $710 per month supplemental allowance until age sixty-two; at that time, defendant's minimum life income benefit, which had been reduced, returned to its original level. Dery further testified that defendant's pension benefits would increase if he continued to work; however, they would decrease if he retired earlier.

MCL 552.18(1); MSA 25.98(1) provides:

> Any rights in and to vested pension, annuity, or retirement benefits, or accumulated contributions in any pension, annuity, or retirement system,

payable to or on behalf of a party *on account of service credit accrued by the party during marriage* shall be considered part of the marital estate subject to award by the court under this chapter. [Emphasis supplied.]

MCL 552.101(4); MSA 25.131(4) provides:

Each judgment of divorce or judgment of separate maintenance shall determine all rights of the husband and wife in and to all of the following:

(a) Any pension, annuity, or retirement benefits.

(b) Any accumulated contributions in any pension, annuity, or retirement system.

(c) Any right or contingent right in and to unvested pension, annuity, or retirement benefits.

Defendant argues that by using the formula suggested by plaintiff the trial court allowed her to continue to accrue retirement benefits in direct proportion to his postmarriage contributions, salary increases, future years of service, and any revised methods of determining defendant's average compensation for pension purposes. Defendant claims that plaintiff is entitled to receive one-half of the accrued monthly benefit to which he was entitled on the date of divorce.

Plaintiff, on the other hand, claims that MCL 552.18(1); MSA 25.98(1) was not intended to limit the discretion of the trial court in dividing a pension which is a marital asset. Plaintiff notes that MCL 552.18(1); MSA 25.98(1) was enacted in conjunction with MCL 28.110(2), 38.40(2), 38.559(7), 38.826(2), 38.927(2), 38.1057(2), 38.1346(4), 38.1553(2) and 552.101(4); MSA 3.340(2), 3.981(40)(2), 5.3375(9)(7), 27.125(26)(2), 27.3178(60.27)(2), 2.169(57)(2), 15.893(156)(4), 5.4001(53)(2) and 25.131(4). Plaintiff argues that the first eight statutes allowed trial courts to

reach state employees' retirement plans by providing that benefits from such plans "shall be subject to award by a court pursuant to section 18 of chapter 84 of the Revised Statutes of 1846, being section 552.18 of the Michigan Compiled Laws, and to any other order of a court pertaining to child support." Furthermore, plaintiff argues that MCL 552.101(4); MSA 25.131(4) merely requires a trial court to ensure that the parties' respective rights in a marital pension are provided for in the divorce or separate maintenance judgment. Defendant disagrees and contends that MCL 552.18(1); MSA 25.98(1) would be unnecessary unless it was intended to limit the trial court's discretion in distributing a marital pension because MCL 552.101(4); MSA 25.131(4) already allows the trial court to exercise discretion.

We agree with defendant that the trial court erred in dividing the pension. The trial court's method of division and distribution is dependent, at least in part, on the future accrual of pension benefits by defendant after the divorce. MCL 552.18(1); MSA 25.98(1) clearly provides that a pension may be distributed as part of the marital estate to the extent of service credit accrued by a party during the marriage. It therefore follows that the portion of a pension attributable to service credit earned before the marrriage or after the divorce is not distributable as part of the marital estate. We also find objectionable the fact that the amount awarded to plaintiff has not been reduced to a sum certain at the time of divorce and is contingent upon various actions and choices made by the parties following the divorce: specifically, defendant's decision as to how much longer he will continue working with his employer and the fact that the judgment gives plaintiff the option of when to start receiving benefits. Inasmuch

as the above-mentioned statute directs the courts
to treat pensions as part of the marital estate, that
is to say, as property, we believe that the value of
that property, the pension, must, as with any
other property, be valued at the time of divorce
and a fixed distribution achieved between the par-
ties.

To equitably distribute the pension, it is neces-
sary for the trial court to determine the value of
the pension at the time of divorce. This is achieved
by reducing the pension to its present value.[1]
Reduction to present value is, as is often the case
in divorce matters, a somewhat complex matter
which lends itself to manipulation and exaggera-
tion by the parties to achieve a low or high figure
as their respective interests may demand. Accord-
ingly, courts must take care to avoid adopting an
exaggerated valuation figure proffered by the ex-
pert of one party or the other. See Troyan, *Pen-
sion Evaluation and Equitable Distribution,* 10
Fam L Rep (BNA) No. 4, Monograph No. 1, at
3001, November 22, 1983. However, as Troyan
points out, it is possible to achieve a neutral and
objective present value of a pension. While we find
much guidance in the Troyan article, there are
some aspects which do not comport with our inter-
pretation of Michigan law. Accordingly, we offer
the following guidelines for the trial court in
determining the present value of the pension in
accordance with the statute.

To begin, we believe that an equitable distribu-
tion under the pension statute requires that the
method employed reflect the fact that the value of
the pension for distribution purposes in a divorce

[1] Various experts did testify as to the present value of defendant's
pension at trial. However, the trial court apparently rejected use of
these present value figures, relying instead on the distribution
method which ultimately found its way into the divorce judgment.

proceeding is only that value which accrued during the course of the marriage. Any accrual of value before or after the marriage may not be considered. Furthermore, the decisions of the parties following the judgment of divorce must not affect the value of the distribution of a portion of the pension to the nonemployee spouse. With these principles in mind, we may establish some guidelines to be employed in determining the present value of the pension.

In order to reduce a pension to present value, it is necessary to know (1) the amount of the monthly benefit subject to division, (2) the percentage of that benefit to be awarded to the nonemployee spouse, and (3) when that benefit would begin payment. See Troyan, *supra.* While it cannot be known what these variables will be until the employee spouse actually retires and begins to receive retirement benefits, it is unnecessary, indeed improper, to wait until the employee spouse actually retires and use the actual amounts received by the employee spouse. Rather, the amount of the pension benefit can, and should, be determined at the time of divorce based upon three assumptions: (1) that the employee spouse will retire at the earliest date permitted under the plan, (2) that the pension is based upon the employee spouse's salary at the time of divorce, and (3) that the pension is based upon the number of years of credited service earned up to the date of divorce.

The reason for the first assumption, that the employee spouse will retire at the earliest retirement date permitted under the plan, was explained by Troyan, *supra* at 3013-3014:

> For valuation purposes assume the employee spouse will retire at the earliest retirement date.

That is the point at which the benefit is *totally* under the control of the employee spouse. That is, the employee spouse may unilaterally elect to start receiving the benefit at a time of his choosing. If the earliest retirement date is prior to the date of the valuation then the commencement of action date is to be considered the earliest retirement date. [Emphasis in original.]

Use of the earliest retirement date is desirable because that date is independent of any decision by either party subsequent to the judgment of divorce. That is, the employee spouse may choose to continue working rather than retiring at the earliest allowable date without that choice affecting the value of the portion of the pension distributed to the nonemployee spouse.

Under the second assumption, the trial court should base the pension benefits on the employee spouse's salary at the time of the divorce. There should be no projection of future salary.[2] This assumption is necessary since any future increase in salary is based upon events which happen following the judgment of divorce rather than events occurring during the course of the marriage. The benefits accrued during the course of the marriage are only those benefits which are related to the salary earned during the course of the marriage.

The final assumption to be employed by the trial court, the number of years of credited service to the employee, is relatively straightforward. The trial court must base the pension benefit for valuation purposes on the number of years the employee spouse worked up until the time of divorce.

[2] Where the pension benefit is based upon an average of the employee's salary for a certain period of time prior to leaving his employment, rather than the amount of salary at the time of leaving employment, then it would be the average of the employee spouse's salary for the required period of time immediately preceding the divorce.

The benefit must not be based upon any speculation as to how long the employee spouse will continue to work following divorce because any increase in pension benefits attributable to the employee spouse's continued employment following the judgment of divorce are benefits which accrue after marriage and not during the course of the marriage.

With the above assumptions, the trial court can determine the monthly pension benefit the employee spouse would receive for purposes of the divorce. However, that amount must nevertheless be reduced by two factors. The first is what Troyan refers to as the coverture factor. That factor simply adjusts the benefit to reflect any time for which the employee spouse was a member of the pension system before the marriage.[3] Once the coverture factor is determined, the pension benefit calculated above must be reduced by multiplying it times the coverture factor.[4] Second, the benefit has to be reduced by the distribution percentage to the nonemployee spouse. For example, if the trial court is distributing marital assets evenly, fifty percent of the benefit would be awarded to the employee spouse and fifty percent to the nonemployee spouse. Thus, the monthly benefit for valuation purposes must be reduced by fifty percent to reflect the distribution amount.[5]

---

[3] This is best explained by use of an example. If the employee spouse worked at his place of employment for twenty-five years prior to the divorce, but was only married during twenty of those years, that portion of the pension which accrued during the course of the marriage was $^{20}/_{25}$ or eighty percent of the pension benefit to which the employee spouse would be entitled at the time of the divorce.

[4] We would note that where the employee spouse joined the pension system during the course of the marriage, the coverture factor would always be one hundred percent. This is true since one hundred percent of the pension, in that situation, would have accrued during the course of the marriage until the time of divorce.

[5] A brief example might be in order. If the monthly benefit, after

Having determined the monthly pension benefit to be awarded to the nonemployee spouse, the trial court must next reduce that benefit to present value. This is achieved by employing generally accepted actuarial methods. Troyan, *supra,* describes a method using tables prepared by a government agency, the Pension Benefit Guarantee Corporation, which greatly simplifies the process of determining the present value when the amount of the monthly benefit is known and when distribution of that benefit would begin. The trial court could also, of course, consider testimony by expert witnesses. However, care should be taken to ensure that the expert's opinion of the present value of the pension is based upon a monthly benefit calculated with the assumptions outlined above.[6]

After going through the above steps, the amount to be distributed to the nonemployee spouse is determined and the trial court must next devise a distribution method. The preferred method is an immediate offset of assets. See Troyan, *supra.* However, an immediate offset of assets is not always feasible as the present value of the pension may far exceed the remaining marital assets. *Id.* In such cases, we leave the distribution method to the trial court's discretion to employ an appropriate method consistent with the principles outlined above.

employing the enumerated assumptions, is $800 and the coverture factor is eighty percent and the assets are divided evenly, then the nonemployee's spouse's share would be $320 per month ($800 times eighty percent times fifty percent.)

[6] We note another possible means of determining a present value for distribution purposes: namely, once having determined the monthly benefit under the procedure outlined above, it could be determined how much it would cost to purchase an annuity policy which would pay that monthly benefit beginning on the date of earliest possible retirement. Indeed, present value of the pension is, in essence, the amount of money necessary now to fund a future distribution of a known monthly benefit amount beginning on a date certain.

In any event, whatever method is employed by the trial court must be consistent with the principles that the amount to be distributed should be determined at the time of divorce and should not be influenced by any actions or decisions of the parties following the judgment of divorce. While such determinations are always difficult, they are not unknown in domestic relations matters. For example, there are occasions where the primary marital asset is the marital home. When possession of the home is awarded to one spouse, it is not always feasible to compensate the other spouse for his or her equity interest in the home. In these situations, although the amount of that equity interest is known at the time of divorce, the trial court must nevertheless devise a viable means of distributing that equity interest at some point in the future. Whether that method is a future lump-sum payment, a current smaller payment coupled with installment payments, or future installment payments, or some other method, we leave that determination to the trial court's discretion. We only direct that the method employed not be dependent upon the amount of the future benefit actually paid to the employee spouse.[7]

---

[7] We note one possible method for consideration by the trial court if an immediate offset of assets is not feasible. Taking the monthly benefit determined under the procedures outlined above, prior to its reduction to present value, but including the reduction for the coverture factor and a reduction for the amount to be distributed to the nonemployee spouse, the trial court could order the employee spouse to begin installment payments to the nonemployee spouse in the amount of that benefit to commence on the earliest retirement date and to proceed until death. Those payments would begin on the earliest retirement date, regardless of whether the employee spouse actually retired since the earliest retirement date is the date assumed for purposes of evaluation. While this method has the disadvantage of there being no present determination of the number of payments to be made, the amount of those payments is fixed at the time of divorce based upon the assumptions we have outlined and the date those payments are to begin is also fixed based upon the assumptions made. The ending date, while unknown, is fixed by a future event, death,

For the above reasons, we reverse the trial court's division of the pension and remand to the trial court for redetermination of the distribution of the pension plan in a manner consistent with this opinion. Otherwise, we affirm.

Affirmed in part and reversed in part.

---

which is explicitly specified in the judgment and is, presumably, outside the parties' control. Furthermore, the actual present value could always be determined at any given point since the amount of the benefit and when the benefit would begin is known. We would point out that the employee spouse could redeem that payment obligation at any time by tendering to the nonemployee spouse the amount of money necessary to purchase an annuity contract that would pay the same monthly benefit beginning at the same time. (It would, of course, be up to the nonemployee spouse to determine if he or she actually wished to purchase such a contract.) Similarly, the payment of those installments could be secured by the purchase of life insurance.