William J. RADIGAN, Jr., Plaintiff
and Appellant,

v.

Margaret R. RADIGAN, Defendant
and Appellee.

No. 16930.

Supreme Court of South Dakota.

Considered on Briefs Sept. 18, 1990.

Decided Jan. 23, 1991.

**484**

James E. McCulloch of Minick, Nelson & McCulloch, Vermillion, for plaintiff and appellant.

Lee M. McCahren, Vermillion, for defendant and appellee.

SABERS, Justice.

Husband appeals judgment of divorce.

### FACTS

William and Margaret Radigan lived with their three children in Germany, where William, a major in the Air Force, was stationed. They separated in 1987 after nearly twenty years of marriage and Margaret returned to the United States with the two younger children and settled in Ohio. Before Margaret left Germany, she and William signed a "Property Settlement and Child Custody Agreement" (agreement) prepared by William's attorney. This agreement provided that William would pay Margaret $500 per month in child support and $500 per month in alimony, and that William would retain exclusive possession of his military pension. For the next thirty months, William performed his support obligations under the agreement.

William filed for divorce in South Dakota because he is a South Dakota resident. Trial was held in Vermillion on June 20, 1988, and divorce was granted on October 10, 1989. The trial court rejected the agreement and entered a divorce judgment which increased William's child support obligation to $750 per month and awarded Margaret $500 per month rehabilitative alimony for five years and one-third of William's military pension.

William claims the trial court abused its discretion:

(1) By rejecting the agreement signed in Germany;

(2) By ordering the $750 monthly child support payments to continue until *both* children reach majority;

(3) By failing to credit the pre-judgment alimony against William's post-judgment alimony obligation;

(4) By awarding Margaret a percentage of William's eventual pension rather than a sum certain based on William's current retirement eligibility; and,

(5) By awarding attorney fees to Margaret.

### 1. THE AGREEMENT

South Dakota courts "may make an equitable division of the property" in a divorce action. SDCL 25-4-44. The payment of alimony may also be compelled "as the court may deem just," SDCL 25-4-41, and child support obligations are set "as may seem necessary or proper" to the court, SDCL 25-4-45. An agreement between the parties on any of these matters is one relevant factor for the court's consideration, but such an agreement does not control the court's exercise of its discretion in light of all relevant factors. *McGee v. McGee*, 415 N.W.2d 812, 813–814 (S.D. 1987); *Shoop v. Shoop*, 58 S.D. 593, 600, 237 N.W. 904, 907 (1931). The trial court's determinations will not be disturbed on appeal unless the court has abused its discretion by reaching a result "clearly against[ ]

reason and evidence." *Gross v. Gross*, 355 N.W.2d 4, 7 (S.D.1984); *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981).

■ Here reason and evidence support the trial court's decision to reject the agreement the Radigans signed in Germany and to make a property division and a child support award inconsistent with its terms. The record shows that William physically abused Margaret on several occasions, that Margaret, unrepresented by an attorney and living as a dependent in an environment controlled by William and William's military employers, signed an agreement giving William one hundred percent ownership of the only major marital asset and that Margaret viewed her signature as a precondition for getting out of Germany. Under these circumstances, we cannot say the trial court abused its discretion in rejecting the agreement.

William suggests in the alternative that the agreement must stand either because he relied on it to his detriment when he made pre-judgment support payments to Margaret, or because Margaret became estopped from challenging it when she accepted those payments. We fail to perceive either detrimental reliance or estoppel in view of the low probability that any court would have awarded Margaret less than the agreement. *See Meyer v. Meyer*, 76 S.D. 268, 271, 77 N.W.2d 559, 560, *reh'g denied* (1956).

## 2. CHILD SUPPORT

■ The Radigans' son will turn eighteen in March, 1991, and their daughter will turn eighteen in March, 1995. Under the terms of the divorce judgment, William is ordered to pay $750 per month in child support "until both children reach the age of majority or until further Order of the Court."

The court may not impose on William a duty to support his children beyond the age of eighteen, or nineteen if they are still in high school. SDCL 25–5–18.1; *Birchfield v. Birchfield*, 417 N.W.2d 891, 895 (S.D. 1988). William argues that "in effect" the court ordered him to pay child support for his son up to the age of twenty-two because the amount of child support contin-

ues undiminished until daughter reaches eighteen. However, the judgment does not allocate child support between son and daughter. The judgment simply awards $750 per month for the support of the minor children, and thus there is no violation of SDCL 25–5–18.1.

Had the statutory child support guidelines at SDCL 25–7–6.2 been in effect at the time of the Radigans' divorce, William's monthly obligation for his two minor children would exceed $900. William is presently benefitted by the court's child support award of $750 per month, as long as his obligation extends to both children. However, if $750 per month proves to be more than the statutory guidelines permit at the time the older child reaches majority, then William's payment should be modified to reflect the appropriate guideline amount for one child.

On this basis, we find no abuse of discretion in the court's child support award.

## 3. CREDIT FOR PRE–JUDGMENT ALIMONY

■ William paid Margaret $1,000 a month for thirteen months between the signing of the agreement and trial. In a separate Stipulation and Order entered at the time of trial, William agreed to continue these payments until judgment, provided the court would credit the alimony portion of his pre-judgment payments against any lump sum alimony the judgment might award to Margaret. William continued the $1,000 monthly payment for an additional seventeen months until entry of the judgment awarding Margaret $750 monthly in child support and $500 monthly in rehabilitative alimony for five years. William argues that the $250 per month by which his pre-judgment payments to Margaret exceeded the child support award, totaling $7,500 over thirty months, should be applied to the rehabilitative alimony award in accordance with the Stipulation and Order.

However, the Stipulation and Order promises to credit William's pre-judgment alimony payments only against an award of permanent alimony reduced to a "lump sum." The trial court awarded no such

alimony to Margaret, but instead granted her rehabilitative alimony in periodic payments over a limited period of time. This type of alimony fell outside the scope of the stipulation entered into with the court's approval, and the court ordered the rehabilitative alimony with full knowledge of the prior payments *and* the stipulation.

In awarding alimony, the trial court must consider the length of the marriage, the parties' respective earning capacities, the effect of the property division, the age and physical condition of the parties, their accustomed standard of living, and the degree of relative fault. *Baltzer v. Baltzer,* 422 N.W.2d 584, 587 (S.D.1988); *Cole v. Cole,* 384 N.W.2d 312, 316 (S.D. 1986). In addition, the award of rehabilitative alimony must be designed to meet an educational need or plan of action whose existence finds some support in the record. *Ryken v. Ryken,* 440 N.W.2d 300, 303 (S.D. 1989).

Taking these factors into account, we find that the award of $500 per month in alimony for five years in addition to the pre-judgment payments was not an abuse of discretion.

### 4. THE MILITARY PENSION

A military pension is property subject to division. *Gibson v. Gibson,* 437 N.W.2d 170, 171–172 (S.D.1989). In this case, it is the principal property to be divided.

Using the formula for dividing military pensions approved as a guideline in *Hautala v. Hautala,* 417 N.W.2d 879, 880 n. 1 (S.D.1988), the trial court arrived at a percentage (33⅓%) of William's pension to which it held Margaret was entitled. The court ordered this percentage to be applied to whatever retirement benefits William eventually collects, whenever he chooses to retire.

William objects to the open-ended nature of this property division. He would like to remain in the military a few more years in order to attain a higher base pay and to become eligible for a higher percentage of that base pay upon retirement. He claims that it is inequitable that he should have to share with Margaret any additional benefits he acquires on his own between divorce and retirement. He wants his property obligation to Margaret to be reduced to a sum certain by applying Margaret's percentage only to the monthly retirement amount he was eligible to receive on the day of the divorce.

In those states which follow a "dual property" regime, any portion of a pension not attributable to employment during the marriage is not subject to division as a matter of law. 3 Rutkin Family Law and Practice, § 37.07[4][a] (1990). Even in many "all property" regimes, where the disposition of either spouse's property is theoretically at the court's discretion, there is a preference for dividing only the portion of a pension which accrued during the marriage as being the more equitable approach. *Id. See also In re Marriage of Oler,* 451 N.W.2d 9 (Iowa App.1989); *Kilbride v. Kilbride,* 172 Mich.App. 421, 432 N.W.2d 324 (1988).

South Dakota is an "all property" state. Under SDCL 25–4–44, all property of either or both divorcing spouses is subject to equitable division by the court, regardless of title or origin.

Our precedents on prospective pension division are neither numerous nor completely clear. In *Hautala,* for example, we permitted a prospective division of husband's military pension similar to that here. The difference, as William points out, is that husband in *Hautala* did not object and the issue was not litigated. In *Stubbe v. Stubbe,* 376 N.W.2d 807, 809 (S.D.1985), we approved a flat 50–50 split in a future pension, but admitted there might be "inequities" in failing to "recognize husband's post-divorce contributions to the plan." *Stubbe* suggested that husband might petition the court for "adjustment of ... wife's share of the pension plan benefits" upon his retirement. *Id.* That solution, however, tends to overlook the fact that a property division, unlike alimony and child support, is not subject to modification due to change in circumstances. *Rousseau v. Gesinger,* 330 N.W.2d 522, 525 (S.D.1983).

On balance, we conclude that South Dakota law leans toward giving maximum latitude to the trial court in dividing property and placing minimal limitations on what the trial court may find "equitable." In this, we are not unique. *See e.g. Rodak v. Rodak*, 150 Wis.2d 624, 442 N.W.2d 489 (Wis.App.1989) (pension was divisible in its entirety even though ten of the twenty-three employment years to which it was attributable occurred before the marriage); *Bullock v. Bullock*, 354 N.W.2d 904 (N.D. 1984) (non-military spouse entitled to percentage of military pension earned after divorce). The *Bullock* Court explained:

> [A]n equitable distribution of marital property is generally a matter for the trial court's discretion and depends on the facts and circumstances in each case. [Citations omitted] Certainly in this case Gerald's years of military service during the parties' marriage provided a basis for any future promotions and increases in pay for length of service to which he may become entitled. Gerald's military career and earning ability were developed and enhanced throughout the course of the parties' seventeen years of marriage ... The [*Hautala*-like] formula ... allocat[ed] ... between the parties the risk that Gerald may never receive military retirement pay.

*Id.*, at 910–911.

To be successful, an appellant must do more than simply allege error. Error must be established in the record. Here William fails to show that the court did not consider his post-divorce contributions to the pension and limit Margaret's share to 33⅓% to compensate for that factor.

This court may not set aside the trial court's property division unless we find a clear abuse of discretion. *Henrichs v. Henrichs*, 426 N.W.2d 569, 572 (S.D.1988). We find no such abuse of discretion in the trial court's prospective division of William's military pension.

### 5. TRIAL COURT ATTORNEY FEES

 Margaret filed an affidavit itemizing attorney fees and expenses over an eight-month period, and the trial court awarded her $1,300.40 in attorney fees.

William urges that Margaret's signing of the agreement in Germany with no intent to abide by it should be grounds for denial of attorney fees. However, the trial court found that William was guilty of over-reaching in the way he presented the agreement to Margaret for her signature in the first place. His "duress" neutralized her claimed "fraud," if any.

 SDCL 15–17–7 gives the trial court discretion to award attorney fees in divorce cases, and we will not disturb its decision unless it has abused its discretion. *Stach v. Stach*, 369 N.W.2d 132, 136–137 (S.D. 1985). The factors the court may consider in deciding whether to award attorney fees include the relative financial condition of the parties, the relative fault of the parties in prolonging litigation, the complexity of the issues, whether briefs were required and whether the case was appealed to the Supreme Court. *Ryken v. Ryken*, 440 N.W.2d at 305–306; *Baltzer v. Baltzer*, 422 N.W.2d at 589.

Under these facts, the award of trial attorney fees to Margaret was not an abuse of discretion.

### 6. APPELLATE ATTORNEY FEES

Margaret also filed a separate motion for appellate attorney fees accompanied by an itemized statement of expenses. *Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D. 1985). In view of the above, we award Margaret appellate attorney fees in the amount of $1,000.

Affirmed.

WUEST, J., and MORGAN, Retired J., concur.

MILLER, C.J., and HENDERSON, J., concur in part and dissent in part.

MORGAN, Retired J., participating.

HERTZ, Circuit Judge, Acting as a Supreme Court Justice, not participating.

HENDERSON, Justice (concurring in part; dissenting in part).

#### ISSUE ONE

I concur. Appellee was destitute; she wanted to leave Germany with the children

of the marriage. She signed an agreement under duress and without knowing her rights. She was physically and emotionally abused and not in a free, open, and voluntary mental state when she signed an executory contract. Nor was she represented by counsel. Child custody and property settlement agreements are not, per se, binding upon the trial courts in South Dakota. Rather, they are evidence which may be considered. *McGee v. McGee*, 415 N.W.2d 812 (S.D.1987). No abuse of discretion.

## ISSUE TWO

I respectfully dissent. In my opinion, the trial court abused its discretion in ordering monthly child support payments to remain the same after one of the two minor children reaches the age of majority. Under the decision of the trial judge, Appellant will be paying child support, in effect, for the eldest minor child until he is an adult at the age of 22 years. There exists clear error in this aspect of the trial decision due to the decision that child support was determined to be $750.00 per month *until both* minor children reached majority. This is contrary to the spirit of our holding in *Birchfield v. Birchfield* and opposed to the holding in *Bruning v. Jeffries*, 422 N.W.2d 579 (S.D.1988). No evidence was introduced what the youngest child's financial needs would be following emancipation of the eldest. Therefore, there is a lack of evidence and no reason to support the trial court on this issue. It is clearly an abuse of discretion. *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981). Twenty-two years of age is not a minor child. This Court has only advanced the age to nineteen due to educational circumstances. *Birchfield, supra*, at 894, 895. "We simply cannot extend a statute where its plain language dictates the result." *Birchfield*, at 895, *citing, State v. Galati*, 365 N.W.2d 575 (S.D.1985) and *Ogle v. Circuit Court*, 89 S.D. 18, 227 N.W.2d 621 (1975).

## ISSUE THREE

I respectfully dissent. Again, in my opinion, there is an exceedingly unfair re-

sult created by the reasoning power of the trial court, emanating from its role to use its discretion; therefore, this failure to exercise sound discretion on "alimony credit" should be likewise reversed.

Basically, Appellant should have been given credit for making monthly payments of $1,000.00 to his wife for 13 months prior to trial. First, we should observe that Appellant agreed to continue these $1,000.00 monthly payments between the trial date and decision if he received a credit for any alimony award granted to his wife. I must call a spade a spade. This trial judge, knowing these circumstances, entered a judgment 17 months after hearing the evidence.

As a result, Appellant has had his rights sacrificed on the altar of delay. It is not right. We should not tolerate this type of injustice. Under *Herndon*, it is a clear abuse of discretion.

Furthermore, the trial court's decision is opposed to the general rule in this country that credit for payments, under these circumstances, is equitable and fair. *Peters v. Peters*, 15 Utah 2d 413, 394 P.2d 71 (1964); *Rickus v. Rickus*, 184 Neb. 833, 172 N.W.2d 628 (1969).

## ISSUE FOUR

Again, the trial court erred for it used a "projected" length of military service to determine which portion of Appellant's retirement benefits his wife should receive. Therefore, I respectfully dissent on this issue, also.

Clearly, the trial court failed to follow this Court's recent decision on the division of retirement plans in *Hautala v. Hautala*, 417 N.W.2d 879 (S.D.1988) (*see* footnote 1). The trial court sustained Appellant's objection to a line of testimony—all speculative—based upon a 30 year retirement; but, thereupon, reversed itself in its decision. There was no testimony that Appellant would retire upon 30 year's service. Again, this was an abuse of discretion. Guesswork is the base of the division. In *Hautala*, the military pensioner did not contest the projections; here, the judge

reached out and seized upon 30 years as if he could compel the Appellant to serve in the military for that length of time.

### ISSUE FIVE

An award of attorney's fees to the wife was fair in light of the fact, that under my theory, she prevails on issue one.

I am authorized to state that Chief Justice MILLER joins in this special writing.