67 P.3d 1037 (2003)
2003 UT App 87
STATE of Utah, in the interest of S.A.K., a person under eighteen years of age.
V.K.W., Appellant,
v.
State of Utah, Appellee.
No. 20020315-CA.
Court of Appeals of Utah.
March 27, 2003.
Alan D. Boyack, St. George, for Appellant.
Mark L. Shurtleff, Atty. Gen., Carol L. Verdoia, and John M. Peterson, Asst. Attys. Gen., Salt Lake City, for Appellee.
Martha Pierce and Angela Adams, Salt Lake City, Guardians Ad Litem.
Before Judges BENCH, GREENWOOD, and THORNE.

OPINION
GREENWOOD, Judge:
¶ 1 V.K.W. (Mother) appeals the Adjudication/Disposition Order placing her daughter, S.A.K., in the custody of S.L.B. and C.O.B. (Grandparents). Mother argues that the juvenile court erred when it admitted S.A.K.'s videotaped testimony of sexual abuse by her stepfather and his nephew, thus denying Mother an opportunity for cross-examination. The Guardian ad Litem (the Guardian) argues that this court does not have jurisdiction to hear this matter because Mother failed to file a timely appeal. We conclude that this court has jurisdiction and affirm the juvenile court's order.


*1038 BACKGROUND
¶ 2 In September 2001, S.A.K. was returned to Mother's care after being temporarily placed with Grandparents because of S.A.K.'s parents' inability to care for her. In November 2001, S.A.K. was again returned to Grandparents after it was alleged that she was a victim of sexual abuse perpetrated by Mother's husband (Stepfather) and his young nephew.
¶ 3 During the investigation of the alleged sexual abuse, S.A.K. was interviewed by Julie Willden, a social worker, and Detective Shayne Copeland at the Washington County Children's Justice Center. The interview was videotaped and transcribed. In the videotape S.A.K. stated, among other things, that Stepfather had touched her "many times" in "the private" with his hand underneath her clothes for a "long time." S.A.K. described where she was in the house when the activity took place and what she was wearing. S.A.K. reported that she told Mother, who told Stepfather not to do it anymore. S.A.K. also described an incident with Stepfather's young nephew where he got on top of her and "frenched kissed" her, and another incident where the nephew touched her "on the private" over her clothes.
¶ 4 An adjudication hearing on the allegations of sexual abuse was scheduled and the State filed a motion to admit S.A.K.'s videotaped testimony in lieu of having her testify. The juvenile court determined that S.A.K. was "unavailable" to testify at the adjudication hearing and admitted her testimony through the videotape.
¶ 5 The adjudication hearing was held on February 8, 2002. The juvenile court issued a memorandum decision on March 5, 2002, making the following findings: S.A.K. was sexually abused by Stepfather, S.A.K.'s video testimony was credible, Grandmother's testimony was credible, Stepfather's testimony was not as credible and there was an "obvious motive" as to his testimony, and Mother had "an obvious bias in favor of [Stepfather] and against [S.A.K. and Grandparents]" which "tainted" her motive in testifying. There was no order for custody or guardianship in this decision.
¶ 6 A disposition hearing took place March 7, 2002. On March 25, 2002, the court issued an Adjudication/DispositionFindings of Fact, Conclusions of Law, Order, and Notice of Permanency Hearing (the Adjudication/Disposition Order). In the Adjudication/Disposition Order, the juvenile court stated that S.A.K. was abused and neglected, based on the court's previous finding that she was sexually abused by Stepfather and his nephew. The court ordered S.A.K. to remain under the protective supervision of the Division of Child and Family Services (DCFS) and in the custody of Grandparents. The court then scheduled a permanency hearing for April 8, 2002.
¶ 7 Mother filed a Notice of Appeal on April 8, 2002, stating she was appealing the "Disposition Order and [P]ermanency" from the March 7, 2002 disposition hearing. The juvenile court issued a Permanency, Guardianship, and Protective Order on May 1, 2002, placing S.A.K. in the permanent care, custody, control, and guardianship of Grandparents.

ISSUES AND STANDARDS OF REVIEW
¶ 8 The Guardian argues that this court lacks jurisdiction because Mother failed to timely appeal from the adjudication order. "As a threshold matter, we must determine whether [Mother's] notice of appeal was timely filed, and therefore, whether we have jurisdiction." Reeves v. Steinfeldt, 915 P.2d 1073, 1074 (Utah Ct.App.1996). This court does not have jurisdiction where an appeal is not timely filed pursuant to rule 4 of the Utah Rules of Appellate Procedure. See State v. S.H., 2002 UT 118, ¶ 23, 62 P.3d 444 (stating that if order not timely appealed, court lacks jurisdiction "to hear challenges to the order").
¶ 9 Mother argues that the trial court erred in admitting S.A.K.'s videotaped testimony preventing Mother from conducting cross-examination. "`A trial court has broad discretion to admit or exclude evidence and its determination typically will only be disturbed if it constitutes an abuse of discretion.'" State v. Comer, 2002 UT App 219, *1039 ¶ 11, 51 P.3d 55 (quoting State v. Whittle, 1999 UT 96, ¶ 20, 989 P.2d 52).

ANALYSIS

I. Jurisdiction
¶ 10 The Guardian argues that this court lacks jurisdiction because Mother failed to timely file her appeal. Specifically, the Guardian argues that Mother, by contesting the admission of S.A.K.'s videotaped testimony, is really claiming error in the juvenile court's memorandum decision following the adjudication hearing. The Guardian argues that because Mother's Notice of Appeal was filed after the March 25 Adjudication/Disposition Order granting custody of S.A.K. to Grandparents, and not within thirty days of the March 5 adjudication order, the appeal is untimely. See Utah R.App. P. 4(a) (requiring filing of notice of appeal within 30 days "of entry of the judgment or order appealed from"). The Guardian further argues that although Mother timely appealed the disposition order and the permanency order, she stipulated to both orders. As a result, the Guardian asserts this court should simply affirm the two orders. We disagree.
¶ 11 To aid in our analysis, we begin by describing the nature and purpose of adjudication and disposition hearings. After a petition is filed alleging abuse, neglect, or dependency, see Utah Code Ann. § 78-3a-305 (2002), and a shelter hearing is held, see id. § 78-3a-306 (2002), the juvenile court is required to schedule a pretrial and final adjudication hearing "no later than 60 calendar days from the date of the shelter hearing." Id. § 78-3a-308 (2002). "If, at the adjudication hearing, the court finds, by clear and convincing evidence, that the allegations contained in the petition are true, it shall conduct a dispositional hearing." Id. § 78-3a-310(1) (2002). "The dispositional hearing may be held on the same date as the adjudication hearing, but shall be held no later than 30 calendar days after the date of the adjudication hearing." Id. § 78-3a-310(2). At the disposition hearing, among other things, the court may alter custody, "order protective supervision, family preservation, medical or mental health treatment, or other services." Id. § 78-3a-311(1) (2002).
¶ 12 In this case, the juvenile court held an adjudication hearing on February 8, 2002. The court then issued a memorandum decision on March 5, 2002, in which the court found the allegations of sexual abuse to be true. See id. § 78-3a-310(1). On March 7, 2002, within 30 days from the date of the adjudication hearing, the court held a dispositional hearing after which, on March 25, 2002, the Adjudication/Disposition Order was entered. See id. § 78-3a-310(2). Basing its decision on the finding of sexual abuse from the adjudication hearing, the court ordered S.A.K. to remain in the protective custody of Grandparents until the permanency hearing on April 8, 2002. At this hearing, Grandparents were granted permanent custody of S.A.K. See id. § 78-3a-311.
¶ 13 In child welfare proceedings, unlike traditional civil cases, appeals may be heard from more than one final judgment.[1]See In re E.M., 922 P.2d 1282, 1284 (Utah Ct.App.1996) (per curiam) (stating ongoing jurisdiction of juvenile courts requires appellate courts to follow a different approach than final judgment rule). An adjudication order is one such judgment that we have found to be final for purposes of appeal.[2]See id. While determining that an adjudication order constitutes a final appealable order for the purpose of appellate review, we stated that the importance of final judgments for the purpose of appellate review cannot "override the concern for a child's welfare." *1040 Id. (citing In re J.J.T., 877 P.2d 161, 164 (Utah Ct.App.1994)). We noted that "[t]he unique nature of child welfare proceedings compels us to apply an analysis different from the analysis traditionally applied in civil cases." Id.
¶ 14 Adjudication and disposition hearings in juvenile court may be compared to criminal proceedings, where a trial court, after determining that a defendant is guilty, holds a sentencing hearing to determine the consequences resulting from the guilt finding in the previous hearing. See Utah R.Crim. P. 22. In child welfare proceedings, if the petition's allegations of neglect, abuse, or dependency are found to be true in the adjudication hearing, those findings provide the basis for determining the consequences in the disposition hearing. Possible consequences include changes in a child's custody, conditions of visitation, supervision, or treatment. See Utah Code Ann. § 78-3a-311. Consequently, an appeal from a disposition order should be sufficient to allege errors occurring in the adjudication proceedings, just as an appeal after sentencing in a criminal case may allege errors in the trial as well as in sentencing. Actually, it makes more sense to appeal after the disposition hearing, rather than the adjudication hearing, because this court will have before it the record of the trial on the petition, the juvenile court's findings of fact, and the judgmentthat is, the juvenile court's conclusions of law and order as to the child's future whereabouts and status.
¶ 15 Thus, we conclude that this court has jurisdiction to hear this appeal of a ruling during the adjudication hearing where Mother timely filed a notice of appeal within thirty days of the disposition hearing order.

II. Admission of Videotape
¶ 16 Mother claims that the juvenile court abused its discretion in admitting S.A.K.'s videotaped testimony of the alleged sexual abuse because it was unreliable and denied Mother the opportunity for cross-examination.
¶ 17 Rule 37A of the Utah Rules of Juvenile Procedure permits the admission into evidence of recorded statements in abuse, neglect, or dependency proceedings if all the conditions set forth in the rule are met. See Utah R. Juv. P. 37A(1). The conditions are:
(a) no attorney for any party is in the child's presence when the statement is recorded;
(b) the recording is visual and aural and is recorded on film or videotape or by other electronic means;
(c) the recording equipment is capable of making an accurate recording, the operator of the equipment is competent, and the recording is accurate and has not been altered;
(d) each voice in the recording is identified;
(e) the person conducting the interview of the child in the recording is present at the proceeding and is available to testify and be cross-examined by either party;
(f) the parties and the parties' attorneys are provided an opportunity to view the recording before it is shown to the court;
(g) the court views the recording and determines that it is sufficiently reliable and trustworthy and that the interest of justice will best be served by admission of the statement into evidence; and
(h) the child is available to testify and to be cross-examined at trial, either in person or [by closed circuit television or other court order], ... or the court determines that the child is unavailable as a witness to testify at trial under the Utah Rules of Evidence. For purposes of this subsection "unavailable" includes a determination, based on medical or psychological evidence or expert testimony, that the child would suffer serious emotional or mental strain if required to testify at trial.

Id. (emphasis added).
¶ 18 Mother, conceding that the juvenile court met the requirements of rule 37A when admitting S.A.K.'s videotaped testimony, appears to nevertheless argue that the court erred in finding S.A.K.'s testimony reliable. Mother's argument is flawed because an inherent requirement of rule 37A(1)(g) is that the testimony be "sufficiently reliable and trustworthy." Id. Having conceded that the requirements of rule 37A were met, Mother *1041 attempts to argue error under Utah Code Ann. § 76-5-411 (1999) and Utah Rules of Criminal Procedure 15.5.
¶ 19 Section 76-5-411 and rule 15.5 are not binding on the juvenile court, but rather were created to protect a criminal defendant's right to confrontation. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."); Utah Const. art. I, § 12 (same). We therefore decline to review the juvenile court's action under those provisions.
¶ 20 In analyzing S.A.K.'s testimony under rule 37A(1)(g), we determine the court did not abuse its discretion in finding her testimony to be reliable and trustworthy. In the memorandum decision entered after the adjudication hearing, the juvenile court made sufficient findings as to the reliability of S.A.K.'s testimony. The juvenile court found S.A.K.'s videotape testimony to be "appropriate and convincing," frank but not pushy, spontaneous, "appropriately uncomfortable," age appropriate, "consistent as ... to specific allegations of abuse," and a recollection of events that did not seem rehearsed.[3] The juvenile court found that S.A.K.'s explanation of the incidents was such that it was more likely she suffered abuse than that she was coached, because her answers were "in sufficient detail to answer a full one-hour examination appropriately," and that "although there were errors in the testimony they are understandable."[4] Although the court was concerned with a few of S.A.K.'s answers, those concerns did not "undermine her credibility."[5]
¶ 21 Finally, we note that Mother did not argue before the trial court or on appeal that the trial court erred in determining S.A.K. was unavailable to testify as required by rule 37A(1)(h). Rather, Mother stipulated to the admission of the videotape and then claimed error when she was unable to cross-examine S.A.K., without ever assailing the juvenile court's finding that she was unavailable to testify.[6] Mother cannot have it both ways; therefore, we conclude the juvenile court did not abuse its discretion in admitting the videotaped testimony.

CONCLUSION
¶ 22 This court has jurisdiction to hear an appeal from an order entered after a disposition hearing, including issues arising from the adjudication hearing. Due to the interrelation of the adjudication and disposition hearings, we determine the appeal may be properly and timely filed after the disposition hearing. Therefore, Mother's appeal is timely.
¶ 23 Additionally, we conclude that the juvenile court did not abuse its discretion in admitting S.A.K.'s video testimony or in finding it reliable and admissible under Utah Rule of Juvenile Procedure 37A. Therefore, we affirm.
¶ 24 WE CONCUR: RUSSELL W. BENCH and WILLIAM A. THORNE JR., Judges.
NOTES
[1] As noted in E.M.:

[T]he possibility of multiple appeals in a case is not without precedent. The district court in divorce proceedings retains continuing jurisdiction to make subsequent changes or new orders as a result of a material change in circumstances with the result that several orders in a single case may be final and appealable. See Utah Code Ann. § 30-3-5 (Supp. 1995); White v. State, 795 P.2d 648, 650 (Utah 1990); Foulger v. Foulger, 626 P.2d 412, 414 (Utah 1981); Peters v. Peters, 15 Utah 2d 413, 394 P.2d 71, 73 (1964).
In re E.M., 922 P.2d 1282, 1284 n. 1 (Utah Ct.App.1996) (per curiam).
[2] On the other hand, a shelter hearing order is not a final order for purposes of appeal. See In re M.V., 937 P.2d 1049, 1051 (Utah Ct.App.1997).
[3] Additionally, the court found no proof or even speculation of anyone coaching S.A.K.'s testimony.
[4] The errors in S.A.K.'s testimony seem related to age and circumstance rather than untruthfulness. For example, S.A.K. stated she lived in a house instead of a trailer and that the bed was green instead of blue.
[5] The videotaped testimony in this case is very different than the testimony in State v. Lenaburg, 781 P.2d 432 (Utah 1989), the case cited by Mother. In Lenaburg, the court found the victim's videotaped testimony to be unreliable because the child's testimony regarding a monster's hand and the time of the incident seemed fantasized and inconsistent with her mother's testimony regarding the incident. See id. at 436.
[6] "For purposes of ... [rule 37A(1)(h),] `unavailable' includes a determination, based on medical or psychological evidence or expert testimony, that the child would suffer serious emotional or mental strain if required to testify at trial." Utah R. Juv. P. 37A(1)(h).