**2023 UT App 5**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF K.T.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

J.K.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20210553-CA
Filed January 20, 2023

Third District Juvenile Court, Summit Department
The Honorable Elizabeth M. Knight
No. 1190244

Gregory W. Stevens, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN D. TENNEY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Appellant J.K. (Mother) appeals the juvenile court's order substantiating several database findings of abuse entered by the Division of Child and Family Services (DCFS). We affirm.


BACKGROUND

¶2     In August 2020, the State filed with the juvenile court a Verified Petition for Protective Supervision requesting the court

to find Mother's son, K.T., "abused, neglected and/or dependent and to grant protective supervision of [K.T.] to DCFS." The petition alleged that DCFS had on three separate occasions previously supported findings of abuse of K.T. against Mother.[1] In addition to the request for protective supervision of K.T., the petition requested that the juvenile court enter an order "[s]ubstantiating[2] the DCFS supported finding(s) pursuant to Utah Code Ann. § 78A-6-323," now recodified at Utah Code section 80-3-404.[3]

¶3    In March 2021, following discussions with Mother, the State filed with the juvenile court an Amended Verified Petition for Protective Supervision. The amended petition again asked the court to find K.T. "neglected and/or dependent and to grant

---

1. As relevant here, "abuse" is defined as "nonaccidental harm of a child" or "threatened harm of a child." Utah Code Ann. § 80-1-102(1)(a)(i) (LexisNexis Supp. 2022). "'Supported' means a finding by [DCFS] based on the evidence available at the completion of an investigation, and separate consideration of each allegation made or identified during the investigation, that there is a reasonable basis to conclude that abuse, neglect, or dependency occurred." *Id.* § 80-1-102(89).

2. "'Substantiated' or 'substantiation' means a judicial finding based on a preponderance of the evidence, and separate consideration of each allegation made or identified in the case, that abuse, neglect, or dependency occurred." *Id.* § 80-1-102(87).

3. The statutory provisions of Title 78A of the Utah Code that were in effect at the time of the juvenile court proceedings have since been renumbered and recodified as part of the Utah Juvenile Code, which is now found in Title 80 of the Utah Code. Because the provisions relevant to our analysis have not been substantively amended, we cite the recodified version for convenience.

protective supervision of [K.T.] to DCFS," but it eliminated the prior request that the court find K.T. to be "abused." The amended petition repeated the original petition's request that the court enter a finding "[s]ubstantiating the DCFS supported finding(s) pursuant to Utah Code" section 80-3-404.

¶4 The parties thereafter appeared before the juvenile court to adjudicate the amended petition. At the outset of the hearing, the State indicated it had reached an agreement with Mother to submit the amended petition "for [a] finding of neglect" and requested, without objection, that "the issue of substantiating the DCFS supported findings" be "set over." Thereafter, Mother admitted many of the allegations of the amended petition. But pursuant to rule 34(e) of the Utah Rules of Juvenile Procedure, she declined to either admit or deny the allegations that DCFS had previously supported findings of abuse by Mother against K.T.[4] The parties then presented argument. The State argued for a finding of neglect, while Mother argued for a finding of dependency. After the hearing, the court entered a finding of

---

4. Under rule 34(e) of the Utah Rules of Juvenile Procedure, "[a] respondent may answer by admitting or denying the specific allegations of the petition, or by declining to admit or deny the allegations. Allegations not specifically denied by a respondent shall be deemed true." Utah R. Juv. P. 34(e).

Here, the juvenile court took great care to ensure that Mother understood the consequences of not denying these allegations. The court informed Mother that it was "going to find [the allegations] to be true, even though [she was] not admitting nor denying [them]." When Mother indicated she did not understand, the court took a break to allow Mother to confer with her counsel. Following the break, the court confirmed that Mother had ample opportunity to discuss the issue with counsel and understood what was happening with respect to the allegations at issue.

neglect[5] and granted "[p]rotective supervision of [K.T.] . . . to DCFS."[6] The court "reserve[d] the issue of substantiating the DCFS supported findings for the next hearing."

¶5    In June 2021, the case came before the juvenile court for a disposition hearing, during which the State requested that the court address the substantiation issue. The court entertained argument and took the matter under advisement. It thereafter entered a written order substantiating the three DCFS supported findings of abuse by Mother contained in both the original and amended petitions. Specifically, it substantiated the supported findings that K.T. had suffered emotional abuse, physical abuse, and chronic emotional abuse.

## ISSUES AND STANDARDS OF REVIEW

¶6    Mother now appeals the juvenile court's order substantiating the DCFS supported findings of abuse and raises three issues for our review. The first two issues present questions as to the statutory authority of the juvenile court. Mother first argues the juvenile court exceeded its statutory authority to substantiate the DCFS findings of abuse because the amended petition alleged only neglect or dependency and the court had adjudicated only a finding of neglect. "Questions of jurisdiction and statutory interpretation are questions of law that we review for correctness, giving no particular deference to lower court decisions." *In re B.B.G.*, 2007 UT App 149, ¶ 4, 160 P.3d 9.

---

5. Although the juvenile court entered a finding of neglect pursuant to the stipulation of the parties, it indicated the evidence was also sufficient to support a finding of abuse.

6. Even though the court placed K.T. under the protective supervision of DCFS, K.T. remained in his father's custody.

¶7    In a similar vein, Mother next argues the State and the juvenile court were bound by the stipulation of the parties to submit the amended petition only for "a finding of neglect." When "the facts [are] stipulated, we review the conclusions drawn by the juvenile court for correctness." *In re B.T.*, 2009 UT App 182, ¶ 5, 214 P.3d 881 (quotation simplified).

¶8    Lastly, Mother alternatively argues her trial counsel was ineffective for not advising her that the juvenile court could deviate from its legal adjudication of neglect and later substantiate for abuse. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

ANALYSIS

I.

¶9    We turn first to Mother's argument that the juvenile court exceeded its statutory authority in substantiating the DCFS findings for abuse because the amended petition alleged only neglect or dependency and the court had adjudicated K.T. as neglected. We are unpersuaded by this argument because it conflates the State's request that the court adjudicate K.T. as neglected with its independent request that the court substantiate the DCFS supported findings of abuse. The State's request to adjudicate K.T. as neglected so as to bring the child within the jurisdiction of the court and under the protective supervision of DCFS was separate from its request that the court substantiate DCFS's finding that K.T. had suffered a severe type of child abuse. As explained below, the juvenile court had independent statutory authority to adjudicate both issues.

¶10    In Utah, proceedings concerning abuse, neglect, and dependency are governed by Chapter 3 of the Utah Juvenile Code (the UJC). Pursuant to Chapter 3, "any interested person may file

an abuse, neglect, or dependency petition" in the juvenile court. Utah Code Ann. § 80-3-201(1) (LexisNexis Supp. 2022). Among other things, the petition must include "a concise statement of facts, separately stated, to support the conclusion that the child upon whose behalf the abuse, neglect, or dependency petition is brought is abused, neglected, or dependent." *Id.* § 80-3-201(4)(a). After the petition is filed, the court may, upon making specific findings, "order that the child be removed from the child's home or otherwise taken into protective custody." *Id.* § 80-3-204(2). If the court so orders, a shelter hearing must then be held to determine whether continued removal and placement of the child in DCFS's temporary custody are necessary. *See id.* § 80-3-301.

¶11 After the shelter hearing, the juvenile court conducts an adjudication hearing. *See id.* § 80-3-401. An adjudication is a determination of the merits of the State's petition of abuse, neglect, or dependency. "If, at the adjudication hearing, the juvenile court finds, by clear and convincing evidence, that the allegations contained in the abuse, neglect, or dependency petition are true, the juvenile court shall conduct a dispositional hearing." *Id.* § 80-3-402(1); *see also In re S.A.K.*, 2003 UT App 87, ¶ 14, 67 P.3d 1037 ("In child welfare proceedings, if the petition's allegations of neglect, abuse, or dependency are found to be true in the adjudication hearing, those findings provide the basis for determining the consequences in the disposition hearing."). "The dispositional hearing may be held on the same date as the adjudication hearing . . . ." Utah Code Ann. § 80-3-402(2). Dispositions available after adjudication include, among other things, vesting custody of an abused, neglected, or dependent minor in DCFS or any other appropriate person. *Id.* § 80-3-405(2)(a)(i). Thus, an adjudication of abuse, neglect, or dependency brings the child and family within the juvenile court's jurisdiction.

¶12 A separate chapter of the UJC addresses child welfare services. Chapter 2 creates DCFS and establishes its statutory

authority and responsibilities. Among these is its responsibility to investigate reports that a child is abused, neglected, or dependent and to enter findings at the conclusion of its investigations. *See id.* § 80-2-701. A "supported" finding by DCFS is based on evidence available at the completion of an investigation indicating that "there is a reasonable basis to conclude that abuse, neglect, or dependency occurred." *Id.* § 80-1-102(89). Chapter 2 requires that DCFS notify alleged perpetrators of supported findings and establishes a procedure for challenging such findings. *Id.* §§ 80-2-707, -708. In cases involving a supported finding of a severe type of child abuse, the statute also gives DCFS authority to file a petition in the juvenile court seeking substantiation of a supported finding. *Id.* § 80-2-708(1)(c).

¶13    Part 10 of Chapter 2 governs DCFS's record-keeping responsibilities. DCFS uses a database known as the Management Information System to track child welfare and protective services cases. *See id.* § 80-2-1001(3), (4). DCFS uses a subset of that system known as the Licensing Information System (the LIS) to track cases for licensing purposes. *See id.* § 80-2-1002(1)(a)(i). In cases involving a severe type of child abuse or neglect, DCFS enters supported findings into the LIS and the alleged perpetrator thereafter "may be disqualified from adopting a child, receiving state funds as a child care provider, or being licensed by DCFS, a human services program, a child care provider or program, or a covered health care facility." *State v. A.C.*, 2022 UT App 121, ¶ 3, 521 P.3d 186 (quotation simplified).

¶14    All these statutes were in play in these proceedings. On three separate occasions prior to the State's filing of the petition, DCFS had investigated Mother for abuse of K.T. Following each of its three investigations, DCFS had supported a finding of abuse of K.T. against Mother. One of those supported findings was of "chronic emotional abuse" of K.T., which falls within the statutory definition of a "severe type of child abuse" under Utah

Code section 80-1-102(78)(a)(i)(A) that then must be entered into the LIS.

¶15 The amended petition removed the request that the juvenile court adjudicate K.T. as abused. Instead, it requested that the court adjudicate K.T. as neglected. But the amended petition also recited DCFS's history with K.T., stating that DCFS had previously supported findings of abuse against Mother, and requested that the court substantiate these supported findings of abuse. Adjudicating both requests for relief fell squarely within the juvenile court's express statutory authority. Indeed, Mother identifies no statutory provision limiting the court's authority to substantiate DCFS findings of abuse based on the outcome of the State's independent request to adjudicate the status of an allegedly abused, neglected, or dependent child.

¶16 Mother's argument that the juvenile court's substantiation decision must be consistent with its adjudication decision in a related petition for abuse, neglect, or dependency is also inconsistent with the burdens of proof dictated by the UJC. While the juvenile court may adjudicate a minor as abused, neglected, or dependent based only on clear and convincing evidence, it can substantiate a DCFS finding based on a mere preponderance of the evidence. *Compare* Utah Code Ann. § 80-1-102(87), *with id.* § 80-3-402(1). These different standards give rise to the distinct possibility that a juvenile court could decline to adjudicate a minor as abused, while still substantiating a DCFS finding of abuse based on the lower burden of proof.

¶17 Despite the absence of a statutory provision linking the outcome of the amended petition to the outcome of a request for substantiation, Mother argues the juvenile court's ruling on the neglect petition ended the court proceedings, "leaving no question open for further judicial action." (Quoting *In re M.W.*, 2000 UT 79, ¶ 25, 12 P.3d 80.) But this argument is directly contrary to the statutory language. Utah Code section 80-3-404

addresses the responsibility of the juvenile court to adjudicate DCFS supported findings of severe child abuse or neglect and their inclusion in or removal from the LIS. Upon the filing of "an abuse, neglect or dependency petition . . . that informs the juvenile court that [DCFS] has made a supported finding that an individual committed a severe type of child abuse or neglect, the juvenile court *shall* . . . make a finding of substantiated, unsubstantiated, or without merit" and include the finding in a written order. Utah Code Ann. § 80-3-404(1) (emphasis added). This provision also allows joinder of proceedings for adjudication of supported findings of severe abuse or neglect with those that do not constitute severe abuse. *Id.* § 80-3-404(3). And it does not limit the juvenile court's ability to substantiate findings of severe abuse to those cases in which the court has granted a petition to adjudicate a child as abused. In short, the juvenile court was required to rule on the State's substantiation request.[7]

## II.

¶18    Next, Mother argues the State and juvenile court were bound by the facts and legal conclusions contained in the amended petition to which the parties had stipulated. Mother reasons that because the parties had stipulated to a finding of neglect, the juvenile court could not substantiate DCFS's supported findings of abuse.

¶19    Mother's argument is inconsistent with both the language of the amended petition and the course of the proceedings before the juvenile court. At the hearing on the amended petition, the

---

7. Mother also argues the juvenile court erred by not ruling on the State's substantiation request at the time it adjudicated the petition for neglect. But Mother did not preserve this argument below. When the State raised the substantiation request at the adjudication hearing and asked that it be continued to a later hearing, Mother did not object.

State informed the court that the State and Mother had agreed to submit the matter to the court for a "finding of neglect" and that they "would ask also the Court to reserve the issue of substantiating the DCFS supporting findings at this point in time and set that over for disposition." In connection therewith, Mother agreed to admit the allegations of the amended petition except those in paragraphs 5 and 6. Paragraph 5 alleged DCFS's history with the family, including DCFS's supported findings of abuse. Paragraph 6 alleged additional facts supporting the conclusion that K.T. was neglected or dependent.

¶20   Although Mother declined to admit the allegations of paragraphs 5 and 6, she did not deny them. Instead, she proceeded pursuant to rule 34(e) of the Utah Rules of Juvenile Procedure by neither admitting nor denying them. But as the juvenile court expressly informed Mother at the hearing, Mother's decision not to deny those allegations had legal significance since "[a]llegations not specifically denied by a respondent shall be deemed true." *See* Utah R. Juv. P. 34(e). The court was therefore free to base its decision on all the allegations of the amended petition, including those in paragraph 6 regarding DCFS's supported findings of abuse. Because the parties' stipulation was not inconsistent with the court's ruling, it did not err.

III.

¶21   Lastly, we turn to Mother's argument that her trial counsel was ineffective for not advising her that the juvenile court could deviate from its adjudication of neglect and substantiate DCFS's findings of abuse for entry into the LIS. To prevail on an ineffective assistance of counsel claim, Mother must show that counsel's performance was deficient and that this deficient performance prejudiced her defense. *See In re C.M.R.*, 2020 UT App 114, ¶ 19, 473 P.3d 184. A reviewing court must "indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and that under the

circumstances, the challenged action might be considered sound trial strategy." *State v. J.A.L.*, 2011 UT 27, ¶ 25, 262 P.3d 1 (quotation simplified).

¶22 After indulging these presumptions, we are unable to conclude that counsel's performance was deficient because there are many sound reasons why Mother's decision to settle the petition with a finding of neglect, while allowing the juvenile court to resolve the substantiation issue, was sound strategy. The petition sought a finding that K.T. had been abused, and it was possible, if not likely, that proceeding to trial on the original petition could have resulted in both an adjudication of abuse and a substantiation of the abuse claims against Mother. The fact that Mother now regrets her decision to settle does not lead to the conclusion that counsel performed deficiently. Mother appeared before the juvenile court, and the court explained her rights and questioned her about the voluntariness of her decision. Nothing in the record suggests that Mother's decision to settle was the result of ineffective assistance of counsel.

CONCLUSION

¶23 The juvenile court acted well within its statutory authority in substantiating DCFS's findings of child abuse, and the court was entitled to consider all the allegations of the amended petition when determining whether to substantiate that finding. Mother has not demonstrated how her decision to settle was the result of ineffective assistance of counsel. Accordingly, we affirm.

_____